Frank **PIRONE** et al., Plaintiffs,

v.

The **PENN CENTRAL COMPANY** et al., Defendants.

Charles A. **SCOFIELD** et al., Plaintiffs,

v.

The **PENN CENTRAL COMPANY** et al., Defendants.

No. 68 Civ. 3148.

United States District Court, S. D. New York.

Dec. 1, 1971.

Delson & Gordon, New York City, Ralph P. Katz, New York City, of counsel, for plaintiffs.

Robert M. Peet, New York City, for defendants; Jerome H. Shapiro, Schulman, Abarbanel, Perkel & McEvoy, New York City, of counsel.

MEMORANDUM

BRIEANT, District Judge.

Plaintiffs in each of the two above entitled consolidated actions have moved pursuant to Civil Rule 11A(c) for a determination under Rule 23(c) (1) of the F.R.C.P. as to whether the action herein is to be maintained as a class action and if so, the membership of the class.

For the reasons hereinafter set forth, the Court is of the opinion that the action may be maintained as a class action and that there are two subclasses with respect to which the issues are required to be litigated separately.

The Pirone action was commenced on August 2, 1968. On February 1, 1968, the former Pennsylvania Railroad ("PRR") and the former New York Central Railroad ("NYC") combined their operations in what was then described as the PANYC merger. Throughout the railroad system generally, the crafts and brotherhoods worked for the resulting railroad on a "dovetailed" seniority list where the lists were merged and treated as a single list, and each employee of the constituent railroads had credit for his years of service prior to the merger in determining the "dovetailed" list. Elaborate procedures were evolved for the purpose of protecting employees from dislocations as a result of the merger.

The Pirone plaintiffs in the first above entitled action were employees of NYC in its marine division. They were not represented by the railroad brotherhoods but rather by defendant Seafarers International Union of North America ("SIU"). It appears that the marine terminal of NYC in New York Harbor was closed, and the work physically transferred to the marine terminal of PRR which had theretofore been maintained at a separate location, and at that marine terminal, the seniority rosters were combined in such a way that all of the NYC men in order of their NYC seniority were placed at the bottom of the seniority list of PRR, which was continued as before rather than being dovetailed.

It appears that this arrangement was made as a result of collective bargaining between the merged railroad and the SIU, and we are told that this procedure, at great variance from the procedure followed elsewhere in the PANYC system, was ratified by ordinary democratic procedures within the union, or a vote of the membership. The defendant Penn Central Company disclaims any part in this decision and states in effect that it was determined by the union.

About a year later, the New Haven Railroad marine properties were transferred to the merged Penn-Central system. New Haven also had a marine division in New York Harbor in which the employees were represented by SIU. Here again, physically, the marine facilities of New Haven, its wharves and piers, were closed and its operations transferred physically to the former PRR location. Here again, the New Haven employees were placed at the bottom of the prior combined roster, so that all New Haven men were junior in seniority to all NYC men, and both the NYC and New Haven men were junior to all PRR men. Here again we are told that this was effectuated as a result of collective bargaining and a vote of the union membership through ordinary procedures for self-government of the union. These proceedings took place at a different and later time than the proceedings where the NYC men's rights are supposed to have been determined.

The NYC employees in the Pirone case, and the former New Haven employees in the Scofield case, each brought their actions against the railroad and the union, claiming in effect that they were not fairly represented by their union, which should have held out for dovetailing of seniority, as was done elsewhere in the PANYC system and that the railroad was a party to such unfair or improper arrangement. The employees may now be said to be classified in three categories; (1) former PRR employees who will lose seniority if the plaintiffs in the Pirone case or in the Schofield case prevail, (2) former NYC employees who will lose position on the seniority list if the New Haven employees prevail, and (3) persons who have severed or retired, or who have been fired or quit the employment of the merged railroad.

The first above category, those persons who benefited by the procedure which was followed, are adequately represented in this litigation by their un-

ion, which will seek to sustain as correct and proper the procedure which was followed. The NYC plaintiffs who lost out as a result of the manner in which the seniority lists were combined are an aggrieved subclass, even as to those who have continued working, and are entitled to have their status adjudged by a class action. The same is true with respect to the New Haven employees, *a fortiori*. The fact issues are not common as between the New Haven employees and the NYC employees because different union proceedings occurring at different times and presumably under different circumstances of due process, were followed and if the physical fact concerning the nature and extent of the operations in New York Harbor of the prior independent railroads is relevant, and it has been suggested that it is, then there may be different issues of law and fact affecting the former New Haven terminal than will affect the former NYC terminal.

The Court, on the argument of this motion, asked counsel to state by letter whether it was possible under any conceivable theory of law or fact, that the NYC employees could secure dovetailing after the trial of this action, and the New Haven employees fail to obtain the same relief. If this be impossible, then there is no reason why the plaintiffs in the Pirone case (NYC employees), and the plaintiffs in the Scofield case (New Haven employees) may not be treated as one class and represented by single counsel.

Counsel for the defendant union has advised the Court that the question posed must be answered in the negative. Counsel point out that the pleadings filed in behalf of each of the two groups rest upon the same theory of law, namely that plaintiffs were deprived of their rights in that the union failed to discharge its duties to represent them fairly and in doing so to obtain dovetailing of the seniority list. While the position of the union would seem correct from a surface evaluation of the issue, the same question was answered by counsel for the railroad as follows:

"It is entirely possible that at the trial there could be a different disposition on the merits as to former NYC employees and former NH employees. The merger between PRR and NYC became effective February 1, 1968 and the first agreement with which this litigation is concerned as to seniority and a merged list took place within a few months thereafter. My information is that this was ratified at a union meeting. The acquisition of the New Haven assets, including the harbor operations, took place January 1, 1969 after the first merged list was in effect. Some months later the further agreement for a further merged list was negotiated and I am informed likewise ratified at a union meeting. It is entirely possible that former NYC employees were among those ratifying the second arrangement for a merged seniority list.

In any event, the two successive arrangements were reached at separate times under separate conditions and ratification had separate histories. It should also not be forgotten that the considerations as to how reasonable the arrangement was in view of business conditions and the condition of the equipment formerly belonging to NYC and NH are different."

It would be disruptive of this litigation, which has already become sufficiently complicated, (and has taken more time than should have been required) to permit the litigation to proceed at this time on the theory of a single class, and thereafter ascertain during the trial that a different result, for reasons of fact or law should be obtained by the New Haven employees than by the NYC employees. The letter from railroad counsel quoted above seems to indicate that such a possibility does exist.

Accordingly, the Court determines that it is appropriate that the consoli-

dated lawsuits be prosecuted as a class action and declared as such, and that the number of class members makes impractical joining each of them individually and that common questions of law and common questions of fact are presented and that the claims of the representative plaintiffs are typical. There is a risk of inconsistent and varying adjudications with respect to the possible maintenance of separate actions, but the Court, if the issue of law is determined favorably to the plaintiffs, will have to resolve separately the question of what disposition, if any, is to be made for those to whom the achievement of dovetailing at this point in time is of no value, that is those who have severed, died, retired or been discharged.

In the interests of justice, the action will be permitted to be maintained as a class action. There will be two separate subclasses, the subclass represented by Pirone, Hanlon, Elbert, Doheny, Parma and DeLuca, being former New York Central employees and a further subclass consisting of the plaintiffs Schofield, Bernhard, Becker, Verhellen and Ronda, being former New Haven employees.

It is appropriate that separate counsel appear for each subclass. The Court has been asked to disqualify the present attorneys of record for both sets of plaintiffs from further proceedings in the action, but under the particular circumstances of this case such drastic action would seem unwarranted. Defendant union and plaintiffs perceive no conflict of interest whatsoever, but the Court is persuaded that the analysis of defendant railroad as to the possibilities of conflict as to facts and law is valid. Because of the fact that they were unaware of such conflict, and have heretofore treated the case as involving a single issue of law, it does not appear that counsel for plaintiffs in this case could have received any privileged or confidential information relating to the New Haven employees, which would prevent them from appearing for either party. As the Pirone case was brought first, the attorneys of record for plaintiffs may continue their representation of Pirone, et al., and that subclass may proceed in the class action. Plaintiffs Schofield, et al. shall have a period of 30 days from the date of the Order to be entered hereon, within which to obtain new counsel and they shall thereafter proceed in the action as a separate subclass. Following the appointment of new counsel, a prompt application shall be made to the Court for the direction to the members of the class of the best notice practicable under the circumstances, all as provided by Rule 23(c) (2).

It seems that a preliminary injunction was granted in this matter on July 15, 1971. This temporary injunction pending trial is said to cost the defendant railroad, presently in reorganization, approximately $4,000.00 per week. Under such circumstances, the plaintiffs should proceed with all diligence, as they were directed to do by the decision of Judge Lasker, granting such injunction.

Settle order on notice.